Nott, J.,
delivered the opinion of the court:
This is an action brought to recover $1,760 11 for pay as a 1st lieutenant in the 5th United States cavalry, from the 19th November, 1863, to the 5th March, 1865.
In October, 1863, the claimant was taken prisoner by the enemy near Elk Kun, Virginia, under these circumstances, as detailed by Brevet Captain Robert H. Montgomery, adjutant of the 5th United States cavalry, and aide-de-camp of the commanding general of the department of Washington: »
“ On the morning of the 29th October, 1863, Lieutenant Jones, the claimant, left the picket guard and went to the headquarters of the reserve for instructions from the commanding officer, Captain Leib. He returned and told me that he had received orders to send a patrol to his front to patrol the distance of five miles outside of the lines. As soon as the patrol had left for that duty — consisting of six men and a non-commissioned officer — he ordered me to mount my horse and accompany him from the reserve out to the line of videttes. Upon reaching the first vidette upon the main road, he stopped to give the vidette some instructions, I think, and gave me orders to visit the videttes on the left and see if they were properly instructed. This order he countermanded immediately, and ordered me to proceed down the road and ascertain the cause of firing in the front. This order I proceeded to obey, and was joined by Lieutenant Jones before I proceeded far, who accompanied me until we arrived in sight of the patrol, and finding that they were traveling along undisturbed,'he then turned *202 about to join Ms command, and directed me to return with. Mm. While on tbe return, and within a short distance from the videttes, we were surprised and captured by a party of guerillas. We were taken to the headquarters of General Young, (rebel,) and from there to Richmond Libby prison. The claimant remained in rebel prisons with me from October 29th, 1863, the day we were captured, until the 1st of March, 1865, when we arrived within the federal lines.”
And Captain Montgomery adds, somewhat in the character of an expert:
“I was with the claimant when he was captured, and in my opinion he was not guilty of any failure or neglect of duty, though he may have been guilty of an indiscretion in this: that he might have sent me to see the cause of the firing as Ms next junior officer, and permitted me to be captured and avoided capture himself.”
The claimant, as has been said, was a prisoner of war from the 29th October, 1863, to the 1st March, 1865. When exchanged and returned to Annapolis he found that on the 19th November, 1863, he had' been dismissed the service. He found also that his pay was stopped from that date, and that after sixteen months of captivity in rebel prisons he was left without either position* or pay.
Lieutenant Jones promptly demanded a court of inquiry, and in a communication addressed to the Adjutant General on the 13th March, 1865, he says:
■ “I stand before the world as an insubordinate officer and unworthy soldier, while I know myself innocent and can prove it. I ask that I may be ordered before a court of inquiry with a view to have a hearing as to the extent of my criminality, and to rescue rny character from what I call infamy. This application would have been made long since, but I have been an inmate of southern prisons for 16 months, and did not know that I was dismissed until my arrival in this city last week.”
The application was refused.
When we inquire for what cause this officer was thus harshly treated, we findit detailed in a subsequent report of the officer commanding the detachment, viz: that he “left his squadron ” and, went outside of the videttes without an escort or orderly, and without the knowledge or consent” of the officer commanding the detachment.
*203 By tbe Act 3d March, 1865, (13 Stat. L., 489,) Congress checked these arbitrary and despotic acts of the military authorities and secured to every officer thus dismissed a court of inquiry if it should be demanded, and expressly providing that if it was not convened within six months the order of dismissal should be void. But at the time Lieutenant Jones was dismissed no such law existed, and the right to a court of inquiry hung upon the discretion of the Secretary of War. Lieutenant' Jones therefore 'does not contest the legality of his removal, but seeks to recover his pay while a prisoner, secured to him, as he thinks, by a previous act of Congress.
That statute is the Act 30th March, 1814, (3 Stat. L., 114, sec. 14,) and is in these words:
“Every officer, &c., See,., in the service of the United States, who has been, or may be, captured by the enemy, shall be entitled to receive dv/ring his captivity, notwithstanding the expiration of his term of service, the same pay, subsistence, and allowance to which he may be entitled whilst in the actual'service of the United States.”
Under it the Second Comptroller has decided that—
“ The War Department has power to dismiss an officer while in captivity, but under the act of March 30,1814, his pay, &c., during his captivity is to be allowed him, notwithstanding the expiration of his term of service.” (Digest, Opinion Second Comptroller, p. 115.).
And we see no reason to question the correctness of the decision. The act of Congress is as explicit and imperative as words can make it: “who has been or maybe captured by the enemy, shall be entitled toreceive, during his captivity, notwithstanding the expiration of his term of service,” is language too plain to be perverted or misunderstood. The contrary would be to hold that an executive department could annul and defy an act of Congress at its pleasure.
Against this construction of the statute the counsel for the defendants has urged with force that the case of “ Lieutenant Jones does not come within any of the statutes or orders cited in the claimant’s brief. His ‘term of service’ did not‘expire’ in the sense in which these terms are there used. If these laws applied to such a case as this, any unworthy officer or soldier might permit himself to be captured, remain with the enemy *204 tbrougb a long war, and then return (baying- been dismissed from the service) and claim Ms pay.”
If this were so, we should indeed hesitate to give effect to what appears to us the obvious meaning of the law, and further reflect upon its construction. But it is not so. The Articles of War provide ample authority for forfeiting the pay of such a delinquent; and if this officer were guilty of so grave an offense he could have been convicted and punished in the manner which the law prescribes, and not in a manner which the law forbids. Punishment without trial establishes no guilt, and the victim who invokes the investigation of a lawful tribunal and is refused, should not be made to suffer the penalty only awarded by the law to those who are lawfully convicted.
The counsel for the defendants have also urged that “if the court were now sitting as a court-martial on Mr. Jones’s case, it could not fail to confirm the order of the President. This court is sitting neither to pass upon the rulings of an executive department, nor to try military offenders for military offences. It is evident that the claimant did not violate his duty deliberately nor intentionally. The only military witness in the case calls his act an indiscretion and not an offense, and we cannot say whether he was technically guilty. The claimant at the proper time offered to submit himself to a trial if the government so desired. He might have been tried then; he cannot be tried now.
As the claimant does not set forth the items of his account, nor refer to the law and regulations relating thereto, the case will be referred to Colonel Albert Robinson, late assistant paymaster of the United States, as a special commissioner, to state a “pay account” for the claimant as 1st lieutenant of cavalry, from the 19th November, 1863, to the 1st March, 1865, the expenses thereof to be borne by the claimant, and on the coming-in and confirmation of such report final judgment will be rendered.
The case coming up on the report of the special commissioner, and the defendants exceptions’ thereto,
Nott, J.,
delivered the opinion of the court:
This case now comes up on the report of the special commissioner, to whom it was referred with instructions to state a “pay *205 account” for tbe claimant as 1st lieutenant of cavalry, from the 19th. November, 1863, to the 1st March, 1865. The defendants have filed exceptions to the report.
The first exception is that the defendants had neither notice nor opportunity to appear before the special commissioner. The exception we think is well taken. The order of reference does not, indeed, prescribe that such notice shall be given, and the account stated is for the information and convenience of the court; yet, nevertheless, the computation of damages is a proceeding in the case going directly to the amount of the judg ment, and to that extent affecting the rights of the parties. It is also precisely like the inference to a master in chancery or to a referee in a court of law, whereof the practice is well settled that the defendant who has appeared is entitled to notice.
But at the same time it is conceded by both parties that no testimony was given before the commissioner. His report merely states the various items of pay allowed by law aud the Army Begulations to an officer of this rank during the period specified by the court. These items are also separately stated; and they can be as well considered now as if there had been the usual appearance by the parties before the commissioner. Therefore nothing can be gained by sending the report back; for every question in which the defendants are interested is a question of law, to be determined by the court and not by the commissioner.
The only items in the report to which the defendants except are those for servant’s pay.
The ground of the exception is that the claimant gave no proof upon the trial that he had kept or employed a servant during the period of his imprisonment. To this two replies are given. The first is by producing the officer’s pay-account presented to the department and duly certified upon honor as prescribed by Army Begulations. The second, by averring that a very liberal construction is given to the statute by the War Department, and that the requirement is little more than a matter of form.
On referring to the statute we find that it provides that “ all officers be allowed for each private servant actually Jcejpt in service, not exceeding the number authorized by existing regulations, the pay, rations, and clothing of a private soldier, or *206 money in lieu thereof, on a certificate setting forth the name and, description of the servant or servants, in the pay account? (Act 2ith April, 1816, 3 Stat. L., 298, § 12.)
Two questions are presented by this enactment. The first is, whether the keeping of a servant is a positive prerequisite to the recovery of the pay, or whether a constructive or indirect service will be sufficient. In one sense, the waiter of a hotel or the cook of a restaurant is the servant of the persons who receive his service, for the wages indirectly enter into and make up a part of the bill. It might be urged with plausibility that an officer living at a hotel in effect keeps a servant, and that the object of the statute being to support an officer in a creditable manner, and save him from being occupied with servile work, its intent will be fulfilled by his having this work done by various persons instead of one. To this argument the statute returns a direct answer: “A private servant actually Icept in service? The words are too plain to bear evasion. It is urged with zeal by the counsel for the claimant that a servant could not be kept in a rebel prison, and that this construction would require an impossibility. But it does not follow because the servant must be actually kept in service, that he must be actually within the view of the officer. In this case a servant might have been with the officer’s family or left in charge of his horses, and have continued in his actual service during the period of his imprisonment; but that he cannot recover unless there was a servant "actually Icept in service ” does not admit of a doubt.
The second question is as to the proof necessary to sustain this charge in this court. We have held repeatedly that affidavits and ex parte testimony which might be used before congressional committees, or before the executive departments, are not evidence in this court. Here, however, a much nicer question is presented, because the statute disignates the evidence on which the allowance shall be made by the paymaster, viz: uon a certificate” of the officer setting forth certain facts; and such a certificate, it is claimed, was produced before the paymaster and the special commissioner. But we think this precise question is not before us. When the claimant made this “certificate on honor,” he was no longer an officer in the service of the United States. He could no longer be punished for the dishonor *207 .of a false certificate; nor could bis future pay be stopped if it were found that he had wrongfully received .this. He stood like any other citizen having a just claim against the government, and when bringing his action therefor was bound to sustain it by just such evidence as all other suitors are required to give. We must, therefore, strike from the report of the special commissioner these items for servant’s pay, viz:
Pay of servant, 15 months 10 days. $184 00
Difference of pay of servant from May 1, 1864, to March 1, 1865 . 40 00
Clothes of servant, 15 months 10 days. 38 33
Rations for servant, 455 days, at 30 cents per day... 136 50
Making a total of. 398 83
But from this should be deducted. 40 63
Leaving as the amount of the deductions. 358 20
The item so allowed is a deduction made by the commissioner for the income tax to be deducted from officers’salaries. Congress have never imposed on this court the duty of thus collecting taxes, and such deductions have never been made in computing damages. When income is taxable, the law makes other and specific provisions for the collection.
From the amount reported by the commissioner... $1, 721 92
Is to be deducted. 358 20
Leaving. 1,363 72
For which sum the report of the special commissioner is confirmed, and final judgment against the defendants is rendered.